UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS CARLOS FAVELA,<br><br>Defendant. | Case No. 19-CR-0209(2) (SRN-DTS)<br><br><br>AMENDED[1] MEMORANDUM,<br>OPINION, AND ORDER |

Andrew R. Winter and Craig R. Baune, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota, 55415; and Bradley M. Endicott and Katharine T. Buzicky, United States Attorney's Office, 316 North Robert Street, 404 U.S. Courthouse, Saint Paul, Minnesota 55101, for Plaintiff.

Elizabeth R. Duel, Ryan Garry, Attorney, LLC 333 South 7th Street Ste 3020, Minneapolis, MN 55402, and Katherian D Roe and Robert H. Meyers, Office of the Federal Defender, 300 S 4th St Ste 107, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Luis Carlos Favela's Pro Se Motion to Vacate under 28 U.S.C. § 2255 ("Def.'s § 2255 Mot.") [Doc. No. 156]. Specifically, this Order addresses Favela's claim of ineffective assistance of counsel based on the failure to file a notice of appeal. (Def.'s § 2255 Mot., Ground 3.)

---

[1] This Order amends the Court's April 3, 2024 Order [Doc. No. 189] to reflect that it is not filed under seal. In all other respects, it is identical to the April 3, 2024 Order.

1

Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies the remaining claim in Favela's § 2255 Motion.

## I. BACKGROUND

A recitation of the underlying facts of this case is found in the Court's November 21, 2022 Order that addressed the majority of Favela's § 2255 claims. (November 21 Order [Doc. No. 167] at 2–5.) In brief, in August 2019, the Government charged Mr. Favela with one count of conspiracy to distribute methamphetamine. (Indictment [Doc. No. 31], Count 1.) Attorney Kevin DeVore represented Mr. Favela throughout his criminal proceedings in this matter. (Def.'s § 2255 Mot. at 10; *see also* July 25, 2019 Minute Entry [Doc. No. 18] at 1 (preliminary hearing); Sept. 4, 2019 Minute Entry [Doc. No. 43] at 1 (arraignment hearing); Feb. 28, 2020 Minute Entry [Doc. No. 103] at 1 (plea hearing); Aug. 19, 2020 Am. Minute Entry [Doc. No. 152] at 1 (sentencing hearing).)

On February 28, 2020, Mr. Favela pleaded guilty to Count 1 of the Indictment for "[c]onspir[ing] to [d]istribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846." (Plea Agmt. [Doc. No. 105] ¶ 1; *see also* Feb. 28, 2020 Hr'g Tr. [Doc. No. 158] at 27:14.) At the time, Mr. Favela acknowledged that Count 1 carried a maximum sentence of life imprisonment with a mandatory minimum of at least 10 years, a minimum supervised release term of five years, a special assessment of $100, and potential payments of a fine and/or prosecution costs. (Plea Agmt. ¶ 3.) In exchange for Mr. Favela's guilty plea, the Government agreed to

recommend a reduction to Mr. Favela's sentence for his acceptance of responsibility. (*Id.* ¶ 6(d).)

Based on this guilty plea, the Court convened a sentencing hearing on August 19, 2020, and sentenced Mr. Favela to 120 months of imprisonment—the mandatory minimum sentence for his criminal conduct under 21 U.S.C. § 841(b)(1)(A) (*see* Plea Agmt. ¶ 3(b))—followed by five years of supervised release. (Aug. 19, 2020 Hr'g Tr. at 13:18–16:4; *see also* Sentencing J. [Doc. No. 153] at 1–5 *and* Am. Sentencing J. [Doc. No. 155] at 2–5.)

On August 27, 2020, Mr. DeVore mailed a letter to Mr. Favela, enclosing a copy of the Court's sentencing order and statement of reasons. (Government's Ex. 2 at 3.) The letter informed Mr. Favela that he had the right to appeal, and that if he wanted to do so, he needed to file a notice of appeal within 14 days of August 25, 2020. (*Id.*) The letter also advised that Mr. DeVore did not recommend appealing the case, as he believed there were no legitimate appealable issues, and that Mr. DeVore believed that Mr. Favela did not want to appeal based on their prior conversations. (*Id.*) Mr. Favela did not file a direct appeal.

On September 8, 2021, Mr. Favela filed the instant § 2255 Motion, seeking to vacate, set aside, or correct his sentence. (Def.'s § 2255 Mot. at 12.) He alleged ineffective assistance of counsel during his guilty plea negotiations and sentencing, arguing that he received a sentence that conflicted with his Plea Agreement and failed to account for "extraordinary circumstances" supporting the imposition of a lesser sentence, and that counsel was ineffective for failing to file a notice of appeal after Mr. Favela had asked Mr. DeVore to do so. (*Id.* at 4–8.) Mr. Favela also contended that the Court should modify his sentence based on a new law that was not available at the time of his sentencing. (*Id.* at 8.)

3

On November 21, 2022, the Court denied all of Mr. Favela's claims except for his claim that Mr. DeVore did not file an appeal, which the Court deferred pending a limited evidentiary hearing.  (*See* November 21 Order.)  The Court also held that Mr. Favela was eligible for appointed counsel.  (*Id*. at 17-18.)

The Court held an evidentiary hearing limited to this issue on February 27, 2024. Katharine Buzicky appeared on behalf of the Government, and Elizabeth Duel appeared on behalf of Defendant. (*See* Hearing Trans. [Doc. No. 181].)  Mr. Favela attended the hearing, at which he, his sister Janet Favela, and Mr. DeVore testified.  The Court admitted the following exhibits in evidence: Government's Ex. 1 (Billing Records of Kevin DeVore), Government's Ex. 2 (Affidavit and Letter from Kevin DeVore to Luis Carlos Favela [Doc. No. 165]); and Defendant's Ex. 1 (Filed Plea Agreement and Sentencing Stipulations [Doc. No. 105).])

## II.   DISCUSSION

Mr. Favela argues that the evidence shows that he expressly requested that Mr. DeVore appeal his sentence, but Mr. DeVore failed to do so.  He argues that his recollection is clearer because his sentencing—his first and only criminal sentencing, where he faced a substantial term of imprisonment—was more distinctive to him than to Mr. DeVore, who has been involved in many such sentencings.  (Def's Evidentiary Br. [Doc. No. 185] at 8-9). He also argues that, as his plea agreement did not waive his right to appeal, there was no reason for him not to appeal his sentence, regardless of the possible merits. (*Id*.)

The Government argues that the evidence shows that Mr. Favela did not clearly request that Mr. DeVore appeal his sentence.  The Government argues that Mr. Favela is

4

not a credible witness due to the inconsistencies between his pro se motion and his statements during the evidentiary hearing, and that even if treated as credible, Mr. Favela's testimony does not show that he unequivocally requested that Mr. DeVore appeal his sentence. (Gov. Evidentiary Br. [Doc. No. 186] at 7-10).

### A. Legal Standards

Under 28 U.S.C. § 2255, a prisoner in federal custody has a limited opportunity to challenge the constitutionality, legality, or jurisdictional basis of a sentence imposed by a court. Relief under § 2255 is an extraordinary remedy, *Bousley v. United States*, 523 U.S. 614, 621 (1998), "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

In *Garza v. Idaho*, 586 U.S. __, 139 S. Ct. 738, 749–50 (2019), the Supreme Court held that when defense counsel fails to file a notice of appeal upon the defendant's request,

even if the defendant has signed an appeal waiver, the element of prejudice under *Strickland* is presumed. *See also Barger v. United* States, 204 F.3d 1180, 1182 (8th Cir. 2000) ("[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary."); *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) (finding that if the defendant's attorney consulted with his client, the attorney "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

In order for Mr. Favela to establish the first element of a claim for ineffective assistance of counsel, *i.e.*, that counsel's failure to file a notice of appeal was "deficient," he must show that he "manifestly 'instructed [his] counsel to file an appeal.'" *Walking Eagle*, 742 F.3d at 1082 (citing *Barger*, 204 F.3d at 1182). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Barger*, 204 F.3d at 1182. The appropriate remedy for an attorney's failure to file a notice of appeal is re-sentencing, to allow the petitioner the opportunity to file a timely appeal. *Id.* (citing *Holloway v. United States*, 960 F.2d 1348, 1356–57 (8th Cir. 1992)).

Because Mr. DeVore undisputedly did not file a notice of appeal on Mr. Favela's behalf, the Court turns to the question of whether Mr. Favela provided "*express* instructions with respect to an appeal" and Mr. DeVore failed to follow those express instructions. *United States v. Burns*, No. 14-CR-374 (PJS/JSM), 2017 WL 4570773, at *3 (D. Minn. Oct. 12, 2017) (citing *Roe*, 528 U.S. at 478). Mr. Favela must prove that he both instructed

6

Mr. DeVore to appeal, and that his instructions were "clear" and "manifest." *Id.* (citing *Parsons v. United States*, 505 F.3d 797, 798 (8th Cir. 2007); *Walking Eagle*, 742 F.3d at 1082).

### B. Hearing Testimony and Exhibits

The evidence and testimony confirms that on August 19, 2020, prior to Mr. Favela's sentencing hearing, he, Mr. DeVore, and members of Mr. Favela's family including Janet Favela met in the cafeteria of the Minneapolis federal courthouse to discuss his upcoming hearing.[2] Mr. DeVore and Mr. Favela spoke about his forthcoming sentence and what he could do to reduce his possible sentence, although their recollections of the conversations differed.

Mr. Favela recalled that he asked Mr. DeVore about whether "there was anything else that he could do for me, if he could appeal or do something for me [to get less time]." (Hearing Trans. 10:13-16.) Mr. Favela specifically recalled asking Mr. DeVore about an appeal. (*Id*. 10:17-19.) Mr. Favela recalled that Mr. DeVore said that he "couldn't appeal because th[en] I will get more time." (*Id*. 10:20-25.) Mr. Favela understood this to mean that Mr. DeVore was not going to appeal. (*Id*. 11:1-3.) Mr. Favela testified that he believed

---

[2] In the § 2255 Motion, Mr. Favela stated that he asked Mr. DeVore to file an appeal *after* his sentencing hearing, which contradicts his hearing testimony. (Def.'s § 2255 Mot. at 7.) At the evidentiary hearing, Mr. Favela explained the discrepancy between his motion and his testimony as the result of an error by his "paralegal" who had drafted his motion papers. (Hearing Trans. 14:20-15:16.) Mr. Favela explained that he did not catch this error, as he did not read through the motion papers before they were submitted, due to a looming filing deadline and Mr. Favela's low level of English-language reading proficiency. (*Id*. at 15:17-17:8; 23:24-25:3.) For purposes of this motion, the Court finds that Mr. Favela did not intend to deceive the Court and will treat Mr. Favela's testimony at the evidentiary hearing as his most accurate recollection.

7

Mr. DeVore knew from this conversation that Mr. Favela wanted to appeal, but did not do so. (*Id*. 14:14-20.) Mr. Favela recalled that Mr. DeVore told him that he could reduce his sentence by cooperating, which Mr. Favela did not want to do. (*Id*. 11:4-11; 18:5-19:11.) Mr. Favela testified that he did not recall speaking to Mr. DeVore about an appeal after this conversation in the cafeteria. (*Id*. 12:9-13:22.) Mr. Favela also did not recall receiving the letter sent by Mr. DeVore. (*Id*. 13:23-14:3.)

Janet Favela, who was also present at the meeting in the cafeteria prior to Mr. Favela's hearing, witnessed the conversation between Mr. Favela and Mr. DeVore. (*Id*. 26:13-27:23.) Ms. Favela recalled that Mr. Favela asked Mr. DeVore for help, stating that "I don't remember exactly what he said but he said that if he can please -- what else can he do or can he help him." (*Id*. 27:24-28:5.) Ms. Favela also recalled Mr. DeVore saying that Mr. Favela could get less time "[b]y talking about other people." (*Id*. 28:8-12.) Ms. Favela did not recall any specific conversation between Mr. Favela and Mr. DeVore about an appeal that day. (*Id*. 28:20-23.)

Mr. DeVore first testified about his experience and practices as a criminal defense attorney. Mr. DeVore explained that he has primarily worked as a criminal defense attorney in both state and federal court for approximately 24 years. (*Id*. 30:13-31:4.) Mr. DeVore said that he has worked on approximately 100 to 125 federal criminal cases including 10 to 12 federal criminal appeals, which he does himself. (*Id*. 31:5-24.) Mr. DeVore also said that he has received training on the substance and procedures for federal appellate practice. (*Id*. 31:25-32:13.) Mr. DeVore then explained the procedure for initiating an appeal in the Eighth Circuit Court of Appeals, beginning with filing a notice of appeal, which must be

performed within 14 days of the issuance of a judgment after sentencing. (*Id*. 32:14-33:1.)

Mr. DeVore then testified about his relationship with Mr. Favela. Mr. DeVore testified that he spoke regularly with Mr. Favela during his representation, primarily by phone and email. (*Id*. 33:2-13.) He testified that Mr. Favela—and periodically his sister—would reach out to him if they wanted information or to request something. (*Id*. 33:14-24.) Mr. DeVore testified that important decisions in the case were made jointly by himself and Mr. Favela. (*Id*. 33:25-34:6.)

Mr. DeVore then testified concerning the conversation in the cafeteria prior to Mr. Favela's sentencing, which Mr. DeVore "generally" recalled. (*Id*. 34:13-14.) Mr. DeVore, when asked about the content of the conversation, explained as follows:

> Well, we had had a history of conversations and attempts to fulfill the safety valve requirements and that didn't pan out and he had continued to request other, you know, options for him to get a lower sentence. And so I had to regularly explain to him what the, you know, the mandatory minimums that bind not only me but the Court regarding what kind of a sentence he could get and there's really only two ways to go below that. And I explained that to him time and again.
>
> And the conversation that we had in the cafeteria was largely on the fact that his guidelines sentence—I believe it was 135 to a higher number, maybe 152ish—but his mandatory minimum was 120, so I had to file a motion for a downward variance under 3553(a) factors. And I had advised him that that would be his lowest sentence that he could possibly get.

(*Id.* 34:17-35:7.)

Mr. DeVore explained that first-time offender clients, including Mr. Favela, often had difficulty understanding the difference between the sentencing guideline range and the mandatory minimum sentence. (*Id*. 34:17-35:7.) Mr. DeVore also explained how the "safety valve" process to reduce a party's sentence below the mandatory minimum works,

9

but that this process did not pan out for Mr. Favela, as "[m]ostly he didn't want to provide information about other people and wasn't forthcoming in his involvement [in the crime.]" (*Id*. 35:8-36:17.)

On cross-examination, Mr. DeVore said that during the conversation they had before Mr. Favela's sentencing hearing, he did not recall "Mr. Favela ever saying anything about an appeal." (*Id*. 46:18-21.) Mr. DeVore said that:

> [Mr. Favela] always wanted help, but we kept going back to the mandatory minimum issue.
>
> After the sentence I don't think he was very happy but we talked right here – or in Minneapolis in the courtroom at counsel table where I summarized this is what's going to happen and just kind of quickly go through that kind of stuff[.]

(*Id*. 46:21-47:2.) Mr. DeVore testified that he did not take contemporaneous notes during the conversation in the cafeteria, as he planned to send a letter afterwards. (*Id*. 47:6-10.)

Mr. DeVore then testified concerning the letter he sent to Mr. Favela, providing that it is his practice to send these letters to clients he is appointed to represent in "[e]very case[,]" as "[w]e were trained to do that through the federal defender's office." (*Id*. 36:22-37:24.) Mr. DeVore testified that he sent the letter by mail and by email, although Mr. DeVore did not receive any confirmation or response from Mr. Favela confirming that he had received the letter. (*Id*. 47:11-17.) Mr. DeVore then testified that had he been instructed to appeal, he would have, but that he saw no meritorious basis to do so:

> Q. And in this [letter,] you explain that your client, your former client, had the right to appeal. Is it your practice to reiterate that statement to your clients?
>
> A. Yes, because even if I advise that there's no legal basis to appeal, if a client

>told me to appeal I'm going to appeal it.
>
>Q. And here in this letter as well you recommend against appeal, correct?
>
>A. I recommended that was my opinion that there wasn't a legal basis to do so but that he certainly had the right to do so and I would do so if he asked me.
>
>Q. Is it your professional opinion as we sit here today that there was no basis for an appeal?
>
>A. I don't see any basis for an appeal given the sentence that he was given.
>
>Q. And when you say "given the sentence," does that mean because he received the mandatory minimum sentence and the safety valve process was unsuccessful?
>
>A. That's correct.

(*Id*. 37:25-38:19.)

Mr. DeVore then testified about his billings for Mr. Favela's case, which indicated he did not file an appeal for Mr. Favela. (*Id*. 40:19-43:8.) When asked whether Mr. Favela ever asked him to file an appeal in his case, Mr. DeVore stated the following:

>Q. At any time, based on your best recollection, did Mr. Favela ask you to appeal in his case?
>
>A. No, he did not.
>
>Q. Did he ask you for help and express that he wanted a lower sentence?
>
>A. Certainly.
>
>Q. But did you ever understand that you were directed to file an appeal on his behalf?
>
>A. Absolutely not.
>
>Q. And had you been directed to file that appeal, what would you have done?
>
>A. I would have filed the Notice of Appeal.
>
>Q. Even though we know that he received the mandatory minimum sentence

11

in this case today?

A. Absolutely.

Q. Even though we know, and you testified here today, in your professional opinion, there was no basis to pursue an appeal?

A. I've done that in a handful of cases.

Q. And why would you do that if you, like this case, believed that there was no basis to appeal?

A. Well, I'm required to do it. If the client advises me to file the appeal, even if there's not a legal basis to do so, I file the Notice of Appeal. And if I determine after the research that really that truly there's no basis to move forward with the appeal after it's been filed, I can file an *Anders* brief, is what we call it, and that protects the client's rights, arguing the points that they want to make or any points that seem close to being legally relevant, and then I can file a motion with the Court of Appeals to withdraw from the case. And I've done that on a couple of occasions.

(*Id*. 43:9-44:15.)

As such, the critical difference between the testimony of Mr. Favela and Mr. DeVore concerns whether, at some point during their August 19, 2020 conversations, Mr. Favela clearly instructed Mr. DeVore to file a notice of appeal. Mr. Favela testified that he believed Mr. DeVore knew from this conversation that Mr. Favela wanted to appeal, but did not do so. Mr. DeVore, conversely, testified that he "absolutely [did] not" understand that he had been directed to file an appeal on Mr. Favela's behalf.

The facts here are similar to those in *United States v. Robinson*, 171 Fed. App'x 536, 537–38 (8th Cir. 2006), in which the court found that the defendant had failed to clearly communicate his request to file an appeal. In *Robinson*, following the defendant's conviction on a guilty plea, he asked his attorney to file an appeal. *Id*. at 537. His counsel then advised him that there was no basis for an appeal and that he "could not have gotten

anything better than this." *Id*. After receiving his attorney's advice, the defendant admitted that he remained silent and said nothing further to his attorney about an appeal. *Id*. The Eighth Circuit found that under such circumstances, the defendant had not communicated a request to appeal. *Id.*; *see also Smith v. United States*, No. 4:03CR0077-GHD, 2008 WL 4890893, at *5 (N.D. Miss. Nov. 12, 2008) ("Even if the court believes that Smith initially asked that a notice of appeal be filed, following [his attorney's] opinion that there was no basis for an appeal, Smith was, by his own admission, silent.  Smith remained silent for approximately four months following sentencing, but in any event, well beyond the expiration of the [appeal period]."); *Moss v. United States*, No. 4:05-CV-2209 (JCH), 2007 WL 2159433, at *3 (E.D. Mo. July 25, 2007) (finding the defendant failed to demonstrate that his counsel knew of his desire to appeal where defendant expressed interest in an appeal, but after counsel discussed the serious consequences that could follow from pursuing an appeal, counsel believed that the defendant agreed with his advice).

While the Court has no reason to doubt that Mr. Favela believes that he instructed Mr. DeVore to file an appeal, based on his own testimony and the testimony of Ms. Favela, his instructions were too unclear to constitute "express instructions with respect to an appeal" such that Mr. DeVore's performance was deficient for not filing an appeal. The unclear nature of Mr. Favela's instructions is reflected in his and his sister's recollections of the August 19, 2020 conversation in the cafeteria.  Mr. Favela testified that he asked Mr. DeVore about whether "he could appeal *or do something for me*," (emphasis added), while Ms. Favela testified that "I don't remember exactly what [Mr. Favela] said but he said that if he can please -- what else can [Mr. DeVore] do or can he help him." Moreover, while

13

the Court takes into consideration Mr. Favela's argument that there was no reason for him not to appeal given the lack of an appeal waiver, his admitted failure to raise the issue with Mr. DeVore after his sentencing—during which he was reminded of his continued right to appeal—supports the inference that he did not clearly instruct Mr. DeVore to appeal.

Further, Mr. Favela does not allege that he had any subsequent communication with Mr. DeVore concerning an appeal, nor provide evidence of follow-up letters that he sent to counsel or to the Clerk's Office regarding an appeal before the deadline had expired. *See Walking Eagle*, 742 F.3d at 1082 (finding defendant's version of events was undercut by his failure to contact the clerk's office or to request an appeal in letters to counsel). Rather, it is undisputed between the parties that the only conversation about an appeal in Mr. Favela's case occurred on August 19, 2020.

Under all of these circumstances, the Court finds credible that Mr. DeVore reasonably believed that Mr. Favela had accepted his professional advice, after which Mr. Favela failed to clearly and manifestly communicate his request to file an appeal in spite of his advice to the contrary. *See Robinson*, 171 Fed. App'x at 537–38; *Smith*, 2008 WL 4890893, at *5; *Moss*, 2007 WL 2159433, at *3. In sum, after considering the testimony, exhibits, and filings in the record, the Court finds that Mr. Favela has failed to meet his burden of demonstrating that his attorney clearly and manifestly knew of his desire to file a notice of appeal, yet failed to do so. *See Barger*, 204 F.3d at 1182. Because he has not demonstrated that his counsel was deficient in this regard, this ground for collateral relief is therefore denied.

14

### C. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). In the Court's November 21, 2022 ruling on the majority of Mr. Favela's § 2255 claims, it deferred ruling on the question of a certificate of appealability with regard to all of his claims until after the evidentiary hearing regarding the notice of appeal. (November 20 Order at 20.) The Court has now reviewed all of Mr. Favela's claims and has considered whether the issuance of a certificate is appropriate here, and finds that no issue raised is "debatable among reasonable jurists." *See Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

### III. ORDER

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Luis Carlos Favela's Pro Se Motion to Vacate under 28 U.S.C. [§] 2255 [Doc. No. 156] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 4, 2024                                s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge